# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

No. 18-cr-363 (RJS)

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/5/19

UNITED STATES OF AMERICA

VERSUS

WILFREDO SEPULVEDA,

Defendant.

OPINION AND ORDER
November 5, 2019

RICHARD J. SULLIVAN, Circuit Judge:

On February 21, 2019, a grand jury returned a five-count superseding ("S3") indictment charging Defendant Wilfredo Sepulveda with the following offenses: (1) Hobbs Act robbery, in violation of 18 U.S.C. §§ 2, 1951; (2) narcotics (fentanyl) possession with intent to distribute, in violation of 21 U.S.C. §§ 812, 841(a)(1) and (b)(1)(A), and 18 U.S.C. § 2; (3) narcotics (heroin) possession with intent to distribute, in violation of 21 U.S.C. §§ 812, 841(a)(1) and (b)(1)(A), and 18 U.S.C. § 2; (4) use and brandishing of a firearm in connection with the offenses charged in Counts One through Three, in violation of 18 U.S.C. §§ 2, 924(c)(1)(A)(i)–(ii); and (5) possession of a firearm after having previously been convicted of a felony, in violation of 18 U.S.C. §§ 2, 922(g)(1). (Doc. No. 48.) On March 25, 2019, the case proceeded to trial before a jury. (Doc. No. 78.)

On March 26, 2019, the government submitted a revised trial indictment containing the same charges set forth in the S3 indictment, except that it lowered the threshold quantity of fentanyl in Count Two from 450 grams to 40 grams pursuant to 21 U.S.C. § 841(b)(1)(B). On March 29, 2019, the jury returned a verdict of guilty on Counts One, Two, Three, and Five of the trial indictment, and acquitted Defendant on Count Four. (Doc. No. 77, Court Ex. 10.)

Now before the Court are (1) Defendant's April 12, 2019 renewed motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 on the counts of conviction, or, in the alternative, for a new trial on those counts pursuant to Rule 33 (Doc. No. 86); and (2) Defendant's August 5, 2019 motion to set aside his conviction on Count Five in light of the Supreme Court's June 21, 2019

decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019) (Doc. No. 97). For the reasons set forth below, Defendant's April 12, 2019 motion is DENIED, and Defendant's August 5, 2019 motion is GRANTED as to his request for a new trial on Count Five, and DENIED in all other respects.

I. BACKGROUND

A. Facts[1]

In April 2018, Defendant was $8,000 in debt to Sergio Polanco, a narcotics supplier from whom he had procured wholesale quantities of heroin three times in the preceding months. (Tr. 195:14–204:5.) Rather than pay Polanco back, Defendant decided to rob him. (Tr. 320:2–5.)

In preparation for the robbery, Defendant offered to pay his friend's sister, Solenny Abreu, $120 to sit on the stairs outside Polanco's apartment door until he left. (Tr. 308:17–309:14.) Abreu went to Polanco's apartment, but after waiting on the stairs for approximately forty-five minutes, she had to leave before Polanco came out. (Tr. 309:15–318:21.) Defendant met up with Abreu at a nearby McDonald's and paid her $80 for the effort. (Tr. 318:14–15.) A few days later, Defendant asked Abreu to return with him to Polanco's apartment in order to rob it. (Tr. 319:5–323:1.) This time, Abreu declined the request. (Tr. 322:15–17.)

Nevertheless, soon thereafter, Defendant went forward with the robbery. On May 14, 2018, Defendant called Polanco for the stated purpose of setting up a meeting at Defendant's apartment to settle part of his $8,000 debt. (Tr. 204:9–205:15.) When Polanco arrived at Defendant's apartment, however, Defendant was nowhere to be found. (Tr. 204:22–206:4.) Instead, when Polanco left his apartment for the scheduled meeting, Defendant, disguised in a woman's dress and wig, went to Polanco's apartment. (Tr. 122:8–125:11, 426:11–12.) Armed with a knife and gun, Defendant gained access to the apartment (Tr. 148:16–23, 153:8–9, 155:8–9), where he encountered Polanco's mother-in-law, Ana Paulino, who was the only person home at the time (Tr. 148:11–14). Defendant brandished the weapons and forced Paulino to stay in her bedroom while he scoured the apartment in search of Polanco's drug stash. (Tr. 148:21–23, 149:6–150:20, 155:8–9.) Defendant eventually found the stash, consisting of 1.38 kilograms of heroin, 266 grams of fentanyl, and $13,000 in cash. (Tr. 92:18–20, 102:7–109:3, 209:16–21.)

Meanwhile, as Defendant was searching for the stash, a downstairs neighbor, Amaury Toro, heard "[a] lot of banging upstairs . . . like some demolition work was going on." (Tr. 420:21–24.) Toro knew Paulino's grandson, Amaury Payano, from the neighborhood, and called him to see whether work was being done on his grandmother's apartment. (Tr. 412:12–413:14, 422:6–423:16.) Payano said he would call Polanco to find out. (Tr. 423:18–19.) While Payano waited to hear back from Polanco, Toro went upstairs to check on the apartment. (Tr. 423:20–25.) Toro was able to look

---

[1] The following facts are drawn from the Trial Transcript ("Tr.") (Doc. Nos. 78, 80, 82, 84, 94) and trial exhibits. For the purposes of this Opinion and Order, all facts underlying the counts of conviction are construed in the light most favorable to the government, *see, e.g.*, *United States v. Gabinskaya*, 829 F.3d 127, 130 (2d Cir. 2016), including facts bearing on Defendant's possession of a firearm, which are relevant to Defendant's conviction on Count Five notwithstanding his acquittal on Count Four, *see United States v. Acosta*, 17 F.3d 538, 545 (2d Cir. 1994) ("The review of the legal sufficiency of the evidence with respect to one count should be independent of the jury's determination that the evidence on another count was insufficient to meet the government's burden of persuasion.").

through the peephole from the hallway, at which point Defendant came to the door and told him that Polanco was not home. (Tr. 423:23–424:17.) Toro then returned to his apartment downstairs, only to receive a call from Payano asking him to go back up to check on the apartment where his grandmother and Polanco lived. (Tr. 425:7–20.)

Toro thereupon left his apartment a second time, but immediately came upon Defendant leaving Polanco's apartment, still in disguise. (Tr. 425:22–426:20.) Defendant dropped his knife as he walked down the stairwell in front of Toro, who continued to follow him into the lobby of the apartment building and out into the street. (Tr. 428:20–430:3.) Toro then chased Defendant around the block, eventually catching up to him and tripping him. (Tr. 439:21–440:3.) Defendant brandished his gun and cocked it, but at that moment Toro managed to wrest the gun away from him. (Tr. 443:6–444:18.) A fight ensued; ultimately, Toro tackled Defendant and prevented him from escaping while bystanders called the police. (Tr. 444:21–447:23.) When the police arrived at the scene, they arrested Defendant and recovered a bag containing drugs and cash, as well as a dress, a wig, a knife, a gun, and Defendant's iPhone. (Tr. 61:3–21, 92:13–20, 106:16–109:4.)

### B. Procedural History

Defendant made a Rule 29(a) motion after the close of the government's case. (Tr. 651:24–25.) The Court heard brief arguments from Defendant and denied the motion. (Tr. 651:25–652:16.) Defendant then completed the examination of his sole witness (a paralegal called as a summary witness), after which the parties presented their closing arguments and the Court charged the jury. (Tr. 656:3–801:20.) After approximately five hours of deliberation, the jury returned guilty verdicts on Counts One through Three and Five, and a verdict of not guilty on Count Four. (Tr. 803:6, 819:8–9; Doc. No. 77, Court Ex. 10.) Defendant timely filed a renewed motion for a judgment of acquittal pursuant to Rule 29(c) and, in the alternative, a motion for a new trial pursuant to Rule 33, on April 12, 2019 (Doc. No. 86 ("Mem.")); the government filed its opposition on May 13, 2019 (Doc. No. 87 ("Opp'n")). On August 5, 2019, Defendant filed a second post-trial motion, arguing that his conviction on Count Five should be set aside in light of the Supreme Court's decision in *Rehaif*. (Doc. No. 97.) The government filed a response on August 9, 2019 (Doc. No. 99), and Defendant filed a reply on August 12, 2019 (Doc. No. 100).

### II. LEGAL STANDARD

Rule 29(c)(2) provides that "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). In particular, the Court may grant an acquittal under Rule 29(c)(2) where the evidence at trial was legally insufficient to sustain a conviction. *See United States v. Irving*, 452 F.3d 110, 117 (2d Cir. 2006). Nevertheless, "[a] defendant challenging a conviction based on insufficient evidence bears a heavy burden." *United States v. Aina-Marshall*, 336 F.3d 167, 171 (2d Cir. 2003). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In this analysis, a court does not assess witness credibility, resolve inconsistent testimony against the verdict, or otherwise weigh the significance of the evidence. *See United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000). Further, a court is to apply this test

3

to "the totality of the government's case and not to each element, as each fact may gain color from others." *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999). "[T]he court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is 'nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt.'" *Id.* (quoting *United States v. White*, 673 F.2d 299, 301 (10th Cir. 1982)).

Pursuant to Rule 33, the court may, upon the defendant's motion, "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The defendant bears the burden of proving that he is entitled to a new trial under Rule 33." *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice. The trial court must be satisfied that competent, satisfactory and sufficient evidence in the record supports the jury verdict." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (internal quotation marks and citations omitted). To grant a Rule 33 motion, "[t]here must be a real concern that an innocent person may have been convicted." *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992).

### III. DISCUSSION

#### A. First Motion Pursuant to Rule 29(c) (April 12, 2019)

Defendant's April 12, 2019 motion first renews his Rule 29 motion, arguing in conclusory fashion that "the government failed to introduce sufficient evidence to prove each and every element of the charged offenses beyond a reasonable doubt." (Mem. at 1.) This general argument mirrors defense counsel's argument at the close of the government's case. When asked then if there were "any specific elements that . . . have not been met," counsel did not identify any. (Tr. 652:6–11.) Thus, Defendant has presented no argument – and the Court finds no basis – for revisiting the Court's previous denial of the Rule 29 motion.

In fact, the evidence at trial amply supports Defendant's convictions on Counts One, Two, and Three. With respect to the Hobbs Act robbery conviction, among other evidence, two eyewitnesses testified that Defendant knowingly and unlawfully robbed Polanco's apartment of cash and drugs (which moved in interstate commerce) by means of actual or threatened force. In addition, video evidence taken immediately before the robbery showed Defendant donning a wig and dress and possessing a knife (GX 203; Tr. 122:24–123:12, 127:13–20), consistent with what the eyewitnesses observed (Tr. 148:20–22, 426:11–15, 428:20–429:1). A separate video taken moments after the robbery further revealed Defendant – in a dress and wig – fleeing from Polanco's apartment with Toro in hot pursuit. (GX 207A; Tr. 440:20–441:2.) As for the narcotics convictions, there was equally strong evidence that Defendant knowingly possessed with the intent to distribute forty grams or more of fentanyl, and one kilogram or more of heroin, since those were among the items stolen from the apartment and recovered from Defendant at the time of his arrest. (*See, e.g.*, Tr. 92:13–20, 107:2–109:4, 209:16–21.) The Court therefore concludes that a reasonable jury could find from the evidence presented at trial that each of the elements of the offenses charged in Counts One, Two, and Three were established beyond a reasonable doubt.

With respect to Count Five, there was also ample evidence – including the parties' stipulation (GX 1001; 577:19–578:25), Paulino's testimony, Toro's testimony, and the testimony of the DNA expert (Tr.

4

504:23–505:5, 505:14–23) – that Defendant possessed a firearm that moved in interstate commerce after having previously been convicted of a felony. That evidence was clearly sufficient to establish the elements of Count Five as they existed at the time of the trial and April 12, 2019 motion – both of which predated the Supreme Court's June 21, 2019 decision in *Rehaif*. Thus, Defendant's first motion for a judgment of acquittal is DENIED; the Court will address Defendant's second motion for a judgment of acquittal, which is based on *Rehaif*, below. *See infra* at pp. 11–13.

B. First Motion Pursuant to Rule 33 (April 12, 2019)

Defendant's April 12, 2019 motion alternatively argues that he is entitled to a new trial under Rule 33 because (1) the Court's rulings on his motion to suppress, motions *in limine*, objections at trial, and jury instruction requests (all of which Defendant renews) "deprived [him] of a fair trial and undermined the reliability of the jury's verdict;" (2) the weight of the evidence did not support the jury's verdict; and (3) a new trial is required in the interest of justice. (Mem. at 1–2.) To the extent that this argument is based on conclusory assertions or generally incorporates previous arguments without elaboration, the Court again finds no basis to revisit its prior rulings or to otherwise order a new trial.

Nevertheless, Defendant's motion asserts several specific errors, including: (1) the admission of evidence extracted from Defendant's iPhone; (2) the preclusion of impeachment evidence relating to two of the government's witnesses; (3) the Court's failure to instruct the jury that it could not consider narcotics intended solely for personal use as part of its drug-quantity determination; and (4) the admission of evidence relating to Defendant's possession of a different firearm than the one charged in Counts Four and Five. (Mem. at 2–3.) The Court will address each of these arguments in turn.

1. Admission of Evidence Extracted from Defendant's iPhone

Repeating arguments advanced in his September 10, 2018 motion to suppress (Doc. No. 14), Defendant contends that "[t]he search of the iPhone, the subsequent full extraction, and the search of that extraction were unsupported by probable cause, executed pursuant to a warrant that lacked particularity and was overbroad, and exceeded the terms even of that warrant" (Mem. at 2). Defendant has not set forth any new argument or otherwise explained why the Court should revisit its previous decision to deny his motion to suppress.

The Court has already ruled that the search of Defendant's iPhone, conducted pursuant to a June 4, 2018 search warrant signed by Judge Lehrburger (Doc. No. 14 Ex. B), was supported by probable cause (Doc. No. 39 at 27–28). As set forth in Special Agent Tyler Myceli's affidavit in support of the warrant application, video surveillance showed Defendant using an iPhone during the robbery charged in this case as well as during a similar home invasion robbery committed two months earlier. (Doc. No. 14 Ex. A ¶¶ 7–11.) Although it is true that the Myceli affidavit relied in part on Defendant's apparent use of the iPhone as a mirror or reverse-camera during the charged robbery, Defendant's use of the iPhone during the charged robbery, in combination with his use of the iPhone during the similar February 2018 robbery, provided a sufficient basis from which Judge Lehrburger could find that the iPhone was likely to contain relevant evidence of criminal activity. *See United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993)

5

(recognizing that "[f]acts of past criminal activity" set forth in an affidavit can establish probable cause if there "is reason to believe that the cited activity was probably not a one-time occurrence"); *see also Stansbury v. Wertman*, 721 F.3d 84, 94 (2d Cir. 2013) (considering a "previous arrest for a similar crime" as relevant evidence to support probable cause for an arrest).

For the reasons stated in the Court's March 4, 2019 Order, the Court also concludes that the officers acted reasonably and in good faith in conducting a full extraction of Defendant's iPhone for the purpose of subsequently searching its contents. (*See* Doc. No. 55 at 10–11.) *See United States v. Alston*, No. 15-cr-435 (CM), 2016 WL 2609521, at *6 (S.D.N.Y. Apr. 29, 2016) ("[C]ourts have routinely upheld the seizure and copying of hard drives and other storage devices in order to effectuate a proper search for the categories of documents or files listed in a warrant." (internal quotation marks omitted)). Likewise, the Court finds that the officers acted properly, reasonably, and in good faith when searching the extracted iPhone pursuant to Judge Lehrburger's warrant. (*See* Doc. No. 55 at 7–9, 11–12.)

Finally, even assuming that evidence from Defendant's iPhone should have been suppressed, Defendant has not explained how the erroneous admission of such evidence rose to the level of undermining the reliability of the jury's verdict. Given the totality of the evidence presented at trial – which included video surveillance evidence, physical evidence, inculpatory testimony from multiple witnesses and, with respect to Count Five, DNA expert testimony – any error did not result in a manifest injustice warranting a new trial.

2. Preclusion of Impeachment Evidence

Defendant also challenges the Court's rulings that prevented defense counsel from impeaching two of the government's witnesses. (Mem. at 2.) First, Defendant argues that the Court erred in precluding a confidential informant identified as "Boogie" from testifying at trial for the purpose of impeaching Sergio Polanco as to his suspicions regarding who robbed him. (*Id.*) Second, Defendant argues that the Court erred in excluding impeachment evidence in the form of Amaury Toro's statements to police (a) implying that he knew the meaning of the word "ransacking," and (b) that he saw Defendant's face through the peephole of Polanco's apartment door. (*Id.*) The Court will address Defendant's arguments with respect to each ruling in turn.

a. Confidential Informant Testimony

With respect to the confidential informant identified as Boogie, Defendant sought to call Boogie as a witness to contradict Polanco's testimony that he did not "know who Boogie is," and that he never told Boogie that he suspected his nephew, Amaury Payano, was involved in the robbery. (Tr. 236:10–15, 282:20–284:18, 293:25–294:2; *see also* Defendant's March 26, 2019 Sealed Letter.) Defendant argues that wiretap line sheets and a law enforcement agent's notes of a proffer session with Boogie, which were disclosed by the government pursuant to 18 U.S.C. § 3500, show (1) that Polanco had a closer relationship with Boogie than Polanco let on, and (2) that Polanco told Boogie that he believed Payano committed the robbery. (Defendant's March 26, 2019 Sealed Letter at 1–2, 4–5; *id.* Ex. C at 1 (proffer notes) ("Robbers = nephew, family member, they were caught.") After hearing argument from the parties (Tr. 292:4–294:16, 517:21–

6

528:23), the Court precluded testimony from Boogie on these subjects, which the Court deemed to be impermissible extrinsic evidence on a collateral matter (Tr. 528:18–20). *See United States v. Purdy*, 144 F.3d 241, 245–46 (2d Cir. 1998) ("Extrinsic evidence offered for impeachment on a collateral issue is properly excluded.").

The Court finds no basis to reconsider its conclusion that Boogie's testimony would not have impeached Polanco with respect to a central issue in the case. At most, Boogie's testimony would have impeached Polanco on the collateral issues of (1) whether Polanco and Boogie had a close relationship, and (2) whether Polanco told Boogie that he initially suspected Amaury Payano of being involved in the robbery. *See, e.g., United States v. Dore*, No. 12-cr-45 (RJS), 2013 WL 3965281, at *6 (S.D.N.Y. July 31, 2013). With respect to the first issue, Defendant offers no explanation as to why the nature and depth of his relationship with Boogie was even relevant, much less central, to his defense. As to the second issue, the fact remains that Polanco's initial *suspicions* regarding the identity of the robber were not probative of the robber's true identity and therefore did not constitute admissible evidence. *See, e.g., United States v. Polanco*, 510 F. App'x 10, 12 (2d Cir. 2013) (summary order); *United States v. Yost*, No. 98-cr-974 (MBM), 2001 WL 536937, at *8 (S.D.N.Y. May 21, 2001), *aff'd sub nom. United States v. Feyrer*, 333 F.3d 110 (2d Cir. 2003). In any event, Boogie's testimony would have been cumulative, since Polanco himself testified that he initially suspected Payano of orchestrating the robbery. (Tr. 217:2–11, 244:24–245:9.) Ultimately, it was for the jury to determine based on the evidence – not Polanco's initial suspicions – whether Defendant committed the robbery. Boogie's testimony was not relevant, let alone so critical that its exclusion warrants a new trial.

### b. Amaury Toro Testimony

Defendant also argues that the Court improperly precluded the introduction of extrinsic evidence showing that Amaury Toro made prior statements that were allegedly inconsistent with his trial testimony – specifically, his testimony that (1) he did not know the meaning of the word "ransacking," and (2) he could not clearly see Defendant's face through the peephole of Polanco's apartment door. (Mem. at 2; Tr. 605:3–607:15, 608:14–24.) With respect to the first alleged inconsistency, whether Toro understood the meaning of the word "ransacking" is a purely collateral issue on which evidence was properly excluded. *See, e.g., United States v. Ghailani*, 761 F. Supp. 2d 114, 124 (S.D.N.Y. 2011).

As for the second issue, Toro testified at trial that there was a "magnifying kind of vision when [he] look[ed] through the [opened] peephole" of Polanco's apartment door, and that he could therefore see that "the place was kind of trashed a little bit." (Tr. 423:23–424:1.) Toro further testified that he could see that "[s]omeone was coming towards the door," although his vision through the peephole was "[a]bout half and half" between being "very clear" and "blurry." (Tr. 424:5–7.) On cross-examination, Toro clarified that he could not see Defendant's face through the peephole; rather, he could only see that "someone [was] in there" and that the person was "tiptoeing for sure." (Tr. 468:2–11.) Defense counsel then asked Toro whether he had previously told police that he looked "straight into [Defendant's] face" through the peephole of Polanco's apartment door, to which Toro responded, "I don't recall." (Tr. 468:6–8.)

7

Defendant argues that Toro's "claim of a lack of memory amounted to a denial of having made the statement" to police. (Mem. at 2.) But while a district court may, in its discretion, construe a witness's stated failure to recall certain facts as a denial, here the Court exercised its discretion to exclude Toro's prior statement to police officers on the ground that it was consistent with his subsequent assertion at trial that he simply could not recall making it. (Tr. 608:23–24.) *See United States v. Insana*, 423 F.2d 1165, 1170 (2d Cir. 1970) (noting that "the trial court may, in its discretion, exclude . . . prior [allegedly inconsistent] testimony" where the witness "in good faith asserts that he cannot remember"). Moreover, while a witness's statement to police officers about whether he saw the defendant at the crime scene would ordinarily bear on a central issue in the case, in this case the centrality of such evidence was undermined by the fact that Defendant did not dispute that he was in Polanco's apartment – a fact that was established by video surveillance evidence, Paulino's testimony, and Toro's testimony concerning his encounter with Defendant immediately after Defendant left Polanco's apartment. (Tr. 40:24–25 (Defense Opening) ("We are not disputing that this man [Defendant] ended up in the apartment . . . .").) Finally, any error clearly did not result in manifest injustice such that a new trial is warranted, since defense counsel was given significant leeway during summation to argue that Toro "obviously lie[d]" about what he saw when looking through the peephole. (Tr. 696:15–25.)

3. Jury Instructions on Narcotics Counts

Defendant next argues that a new trial is warranted because the Court erred in not specifically instructing the jury that it should consider, as part of its inquiry into drug quantity, whether Defendant possessed any of the drugs in question for personal use. (Mem. at 2–3.)

Although it is true that "any fractional quantity of drugs intended for personal use must be excluded" from the jury's finding on drug quantity, *United States v. Williams*, 247 F.3d 353, 358 (2d Cir. 2001); *see also Alleyne v. United States*, 570 U.S. 99, 103 (2013), Defendant cites no authority for the proposition that a district court must include a specific instruction to that effect in every narcotics trial. Moreover, in declining to issue Defendant's requested instruction, the Court did not thereby leave the jury with the erroneous impression that a quantity of drugs intended for personal use should be counted toward the total quantity of drugs for purposes of 21 U.S.C. § 841(b)(1). To the contrary, the Court expressly instructed the jury that it could only convict Defendant on Counts Two and Three if it found that Defendant distributed narcotics or possessed narcotics with the "intent to distribute" them. (Tr. 760:25–762:9.) In addition, the Court instructed the jury, consistent with the law, that it needed to "determine the quantity of the controlled substance that was involved for each count," i.e., whether defendant possessed with intent to distribute 40 grams or more of fentanyl, and one kilogram or more of heroin, in connection with Counts Two and Three, respectively. (Tr. 763:14–764:2.) The jury instructions on drug quantity also expressly referred the jury to the verdict form (Tr. 764:3–7), which explicitly asked whether the jury had found "that the Defendant distributed, or possessed *with the intent to distribute*," the statutory threshold drug quantities at issue. (Doc. No. 77 at 10–11, Court Ex. 10 at 1–2 (emphasis added).) The instructions and verdict form adequately conveyed that the jury could not base its drug quantity findings on drugs intended solely for personal use.

8

Furthermore, the specific instruction requested by Defendant was particularly unwarranted, since there was no evidence in the record from which the jury could find that Defendant possessed a material quantity of drugs for personal use. *Cf. United States v. Porter*, 205 F.3d 1326, 2000 WL 241343, at *2 (2d Cir. 2000) (summary order) (concluding that the district court did not abuse its discretion in failing to give a charge on the lesser-included offense of simple possession since the evidence was "simply insufficient to sustain it"). As discussed above, there was overwhelming evidence that Defendant stole 1.38 kilograms of heroin and 266 grams of fentanyl – which corresponded to roughly 60,000 individual doses, worth approximately $600,000. (Tr. 627:23–628:18.) Thus, even assuming that Defendant presented evidence to suggest that *some* of the drugs he possessed were intended for personal use, in order for the jury to find that the quantities of drugs involved in Counts Two and Three were lower than the threshold quantities charged in the trial indictment (i.e., one kilogram of heroin, and 40 grams of fentanyl), the jury would have needed to find that more than 380 grams of heroin and/or 126 grams of fentanyl were intended solely for personal use. Because Defendant points to no evidence suggesting that such large quantities – or any quantities – were intended for personal use, he was clearly not entitled to a "personal use" instruction on the issue of drug quantity.

### 4. Admission of Uncharged Firearm Evidence

Finally, Defendant argues that a new trial is warranted as to Count Five, charging defendant with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), in light of the allegedly erroneous admission of a photograph depicting Defendant in possession of a firearm other than the one charged in the indictment. (Mem. at 3.) Although the resolution of this evidentiary issue is not strictly necessary given the Court's determination below that a new trial on Count Five is warranted in light of *Rehaif*, the Court will address the issue because it could arise again in any retrial. *See United States v. Griffin*, 510 F.3d 354, 368 (2d Cir. 2007) ("[W]hen remanding for a retrial on the merits, we do, of course, often decide issues that are not strictly before us when they are likely to arise again in the course of the retrial.").

As a general matter, evidence of a defendant's uncharged firearms possession is admissible under Federal Rule of Evidence 404(b) *not* to show the defendant's propensity to possess firearms, but as "similar acts" evidence to prove, *inter alia*, his access to firearms and thus his "knowledge" or the "absence of [a] mistake or accident." Fed. R. Evid. 404(b)(2); *United States v. Brown*, 961 F.2d 1039, 1042 (2d Cir. 1992) (per curiam); *see also United States v. Cassell*, 292 F.3d 788, 794 (D.C. Cir. 2002) (collecting cases). To be sure, evidence of uncharged firearms is irrelevant, and thus inadmissible, if the defendant takes a position that completely removes his mental state under § 922(g) from dispute at trial. *See United States v. Linares*, 367 F.3d 941, 946 (D.C. Cir. 2004); *United States v. Colon*, 880 F.2d 650, 656 (2d Cir. 1989). But where the uncharged firearms evidence is relevant and offered for a proper purpose under Rule 404(b), it is admissible unless the court finds that its probative value is substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403. Although evidence of uncharged firearms possession often poses some risk of prejudice, this risk may be sufficiently mitigated through a limiting instruction. *See, e.g., Cassell*, 292 F.3d at 796 (holding uncharged firearms evidence

9

admissible under Rule 403 in light of limiting instruction); *United States v. Epps*, No. 11-cr-309, 2016 WL 2907540, at *3 (W.D.N.Y. May 19, 2016), *aff'd*, 742 F. App'x 544 (2d Cir. 2018) (same).

Applying these standards, the Court ruled that a photograph that Defendant took on his iPhone approximately two weeks before the robbery, depicting himself with a firearm in his waistband, was admissible for the limited purpose of showing Defendant's access to firearms. (Doc. No. 73 at 31:5–14.) That evidence was ultimately relevant to prove Defendant's knowledge and the "absence of mistake or accident," Fed. R. Evid. 404(b), since the thrust of the defense at trial was that Defendant simply happened to touch the gun, which was actually possessed by Toro, during their fight (Tr. 699:4–701:02), *see, e.g.*, *Brown*, 961 F.2d at 1042 (upholding the admission of uncharged firearms evidence to show the defendant's access to firearms where the defendant contended that the charged firearm could have belonged to someone else).

Further, to mitigate any risk of unfair prejudice, the Court issued two limiting instructions – first, during the trial when Investigator Alfred Hernandez testified as to the type of gun depicted in the photograph and whether it was real, and again during the final jury charge.[2] Specifically, the Court instructed the jury during Hernandez's testimony as follows:

> So, folks, you have seen these photos, which depict the defendant in possession of a firearm. This photograph is admitted into evidence solely for the limited purpose of showing that the defendant had knowledge of and access to firearms. I instruct you that the firearm depicted in the photograph on the screen is not the firearm that the defendant is charged with using, carrying, and/or possessing in Counts Four and Five of this indictment. Therefore, you may not consider the defendant's possession of the firearm depicted in the photograph as a substitute for proof that the defendant committed the crimes charged in Counts Four and Five or for any purpose other than as proof of the defendant's firearms knowledge and access. Although you may consider the defendant's possession of the firearm depicted in the photograph for those limited purposes, you need not do so. You are not required to. It is up to you to decide how much weight, if any, to give to this evidence. Okay? So this is one of those occasions where evidence is being admitted for a limited purpose, and that limited purpose is to show the defendant's knowledge of and access to firearms. This is not – you can't convict him for possessing this gun in the waistband here.

---

[2] Defendant also argues that the Court erred in allowing Hernandez to opine that the gun in the photograph was a real gun despite his not being qualified as a gun expert. (Mem. at 3.) The government, however, properly laid a foundation for Hernandez's personal familiarity with firearms by eliciting testimony that (1) Hernandez had seized over 100 firearms (including Sig Sauers, the type of firearm depicted in the photograph) in the course of criminal investigations; (2) Hernandez had carried a firearm for over 33 years; and (3) Hernandez had undertaken firearms courses and training in a professional capacity. In light of this testimony, the Court properly allowed Hernandez to testify regarding the make and model of the firearm in the photograph and whether it was real. *See, e.g.*, *United States v. Roberson*, 459 F.3d 39, 47 (1st Cir. 2006); *United States v. Larry*, 126 F.3d 1077, 1078–79 (8th Cir. 1997).

(Tr. 620:18–621:14.) During the post-summation jury charge, the Court again instructed the jury:

> You have seen a photograph of the defendant in possession of a firearm. This photograph was admitted into evidence solely for the limited purpose of showing that the defendant had knowledge of and access to firearms. I instruct you that the firearm depicted in the photograph you saw is not the firearm that the defendant is charged with using, carrying, and/or possessing in Counts Four and Five of the indictment. Therefore, you may not consider the defendant's possession of the firearm depicted in the photograph as a substitute for proof that the defendant committed the crimes charged in Counts Four and Five or for any other purpose other than the proof of the defendant's firearms knowledge and access.

(Tr. 786:14–25.) These instructions were more than sufficient to mitigate any risk of unfair prejudice associated with the evidence of Defendant's prior firearm possession.

Finally, Defendant argues in conclusory fashion that the "tension" between the verdicts on Counts Four and Five suggests that "the jury likely considered the gun in the picture as evidence of the § 922(g) charge, resulting in a variance from the Superseding Indictment." (Mem. at 3.) Significantly, Defendant does *not* argue that a new trial is warranted because there was actually a prejudicial variance or inconsistent verdict. (*Id.*) Nor could he. *See Harris v. Rivera*, 454 U.S. 339, 345 (1981) ("Inconsistency in a verdict is not a sufficient reason for setting it aside."); *United States v. Salmonese*, 352 F.3d 608, 621–22 (2d Cir. 2003) ("A defendant cannot demonstrate that he has been prejudiced by a variance where the pleading and the proof substantially correspond, where the variance is not of a character that could have misled the defendant at the trial, and where the variance is not such as to deprive the accused of his right to be protected against another prosecution for the same offense." (internal quotation marks and citation omitted)). The proof of Defendant's firearm possession – which included the testimony of Paulino and Toro and was corroborated by the contemporaneous 911 calls and the recovery of the weapon on the sidewalk next to Defendant (Tr. 83:12–25, 148:20–22, 153:3–9, 441:25–442:19, 560:25–562:6, GX 700 series) – substantially corresponded to the charge in Count Five, and there is nothing in the record to suggest that the jury was unable or unwilling to follow the Court's explicit limiting instructions on the photograph of the uncharged firearm. And just as Defendant may not obtain a new trial based on the alleged tension in the verdict, neither may he use that tension to bolster his evidentiary argument. In short, Defendant's argument invites the Court to engage in "pure speculation" as to the jury's verdict. *United States v. Acosta*, 17 F.3d 538, 545 (2d Cir. 1994) (quoting *United States v. Powell*, 469 U.S. 57, 66 (1984)). Furthermore, Defendant's argument impermissibly asks that the Court reassess its evidentiary ruling based on subsequent events (i.e., the acquittal on Count Four). *See, e.g., United States v. Hill*, 786 F.3d 1254, 1273–74 (10th Cir. 2015) (disapproving of "hindsight bias" and concluding "that – at the time of the district court's ruling – the probative value of the evidence of . . . gang affiliation was not substantially outweighed by the danger of unfair prejudice"). Thus, the Court concludes that the admission of the

uncharged firearm evidence was entirely proper under Rules 404(b) and 403.

### C. Second Motion Pursuant to Rules 29(c) and 33 (August 5, 2019)

In his August 5, 2019 motion, Defendant argues that his conviction on Count Five should be set aside and a judgment of acquittal should be entered in light of the Supreme Court's June 21, 2019 decision in *Rehaif*, which held that a defendant cannot be convicted under 18 U.S.C. § 922(g) unless the government proves that the defendant "knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2199. That holding effectively marked a change in the law in our Circuit; although the Court of Appeals itself had not previously ruled on the issue, district courts within the Second Circuit had "interpret[ed] § 922(g) to require only that the defendant knew that he or she possessed a gun," *United States v. Lahey*, 967 F. Supp. 2d 731, 746 (S.D.N.Y. 2013) (collecting cases), as had practically every other court of appeals in the country, *see Rehaif*, 139 S. Ct. at 2210 & n.6 (Alito, J., dissenting) (collecting cases from ten other circuits). Consistent with this pre-*Rehaif* law and the parties' jointly proposed jury charge, the Court instructed the jury that "[t]he government need not prove that the defendant knew that his prior conviction was punishable by a term of imprisonment exceeding one year." (Tr. 770:9–11.) In addition, at trial the government relied on a stipulation establishing that Defendant had previously been convicted of a felony, but the government did not present any evidence that Defendant *knew* he had previously been convicted of a felony when he possessed a firearm. (Tr. 577:19–578:25; GX 1001.) Thus, the government appropriately does not dispute that the jury instructions were erroneous, or that the evidence introduced at trial was insufficient under *Rehaif*. (Doc.

No. 99.) Instead, the government argues only that Defendant's August 5, 2019 motion is untimely under Rules 29(c)(1) and 33(b)(2), and in the alternative, that vacatur rather than acquittal is warranted. (*Id.* at 2–4.)

With respect to the government's timeliness argument, the Court may extend the 14-day deadline for filing post-trial motions pursuant to Rules 29 and 33, even after the deadline has expired, "for good cause" and upon a finding of "excusable neglect." Fed. R. Crim. P. 45(b)(1)(B). Thus, "[t]he decision whether to grant an extension is within the Court's discretion." *United States v. Ketabchi*, No. 17-cr-243-3 (SHS), 2019 WL 1510444, at *2 (S.D.N.Y. Mar. 25, 2019). Although the government argues that the relevant equitable factors summarized in *Ketabchi* weigh in its favor, none of the cases cited by the government addresses a situation like the one here, where a defendant relies on a post-trial change in the law to support a pending post-trial motion before sentencing. In fact, courts have consistently held that similar circumstances present a valid basis for extending time under Rule 45(b)(1)(B). *See United States v. Abu Khatallah*, 316 F. Supp. 3d 207, 210 n.3 (D.D.C. 2018) (considering an intervening change in the law "a textbook case of 'excusable neglect'" for purposes of Rule 45(b)(1)(B)); *United States v. Kirsch*, 151 F. Supp. 3d 311, 315 (W.D.N.Y. 2015) ("There is no dispute that a significant intervening change in law constitutes a valid basis to extend time under Rule 45(b)(1)(B)."); *United States v. Hines*, No. 12-cr-204 (JAW), 2014 WL 1875164, at *5–6 (D. Me. May 9, 2014) (similar).

The Court can discern no basis for a different approach here, since (1) Defendant filed his second post-trial motion only 45 days after *Rehaif* was decided; (2) there is no allegation of bad faith on the part of

Defendant; (3) the Court gave the government an opportunity to respond to the second motion before ruling on it; and (4) extending the filing deadlines will not delay sentencing, which, after an unrelated adjournment, is now scheduled to be held almost four months after Defendant filed his second motion. *See, e.g., Kirsch*, 151 F. Supp. 3d at 315 (finding "no discernible prejudice to the government or significant delay in the[] proceedings" where the defendant filed his second post-trial motion 37 days after the intervening Supreme Court decision on which it was based). Thus, the Court finds that "good cause" and "excusable neglect" justify extending the applicable 14-day deadline under Rule 45(b)(1)(B) such that Defendant's second post-trial motion is timely.

Nevertheless, Defendant's second motion for a judgment of acquittal under Rule 29(c) fails. It is true that – under the post-*Rehaif* standard – the government did not present any evidence, let alone sufficient evidence, that Defendant knew that he had previously been convicted of a felony when he possessed a firearm. But the Court is neither required nor persuaded to enter a judgment of acquittal in these circumstances. As an initial matter, an acquittal is not compelled by the text of Rule 29(c), which, unlike the mandatory language of Rule 29(a), provides that the Court "*may* set aside the verdict and enter an acquittal" after the jury has returned a guilty verdict. Fed. R. Crim. P. 29(c) (emphasis added). In addition, Defendant cites no authority to suggest that a sufficiency challenge under Rule 29(c) should be reviewed under a supervening legal standard, rather than the standard that applied at the time of the trial. Indeed, district courts have consistently rejected similar requests in the wake of post-trial changes in legal standards. *See, e.g., United States v. Hilton*, No. CR. 97-78-P-C, 2005 WL 757757, at *3 (D. Me. Mar. 24, 2005) ("This is not a situation where no evidence was presented and a Rule 29 judgment of acquittal should have been entered. Instead, there was sufficient evidence to support a conviction under the law as it stood at the time of trial and an absence of evidence, if any, is entirely the result of a subsequent change in the law, not the [g]overnment's failure to provide evidence warranting a conviction."); *see also, e.g., United States v. Mansfield*, No. 18-cr-00466 (PAB), 2019 WL 3858511, at *5 (D. Colo. Aug. 16, 2019) (granting new trial based on *Rehaif*, but denying Rule 29 motion for acquittal).

Moreover, the Double Jeopardy Clause does not bar retrial where the evidence was insufficient merely because an intervening change in law moved the evidentiary goal posts. *See, e.g., United States v. Pearl*, 324 F.3d 1210, 1214 (10th Cir. 2003) ("Because the government cannot be held responsible for failing to muster evidence sufficient to satisfy a standard . . . which did not exist at the time of trial, and because this is trial error rather than pure insufficiency of evidence, [the defendant] may be retried without violating double jeopardy." (internal quotation marks omitted)); *United States v. Ellyson*, 326 F.3d 522, 534 (4th Cir. 2003) ("[I]f the evidence in the record is insufficient to support a verdict under [an intervening decision], it is not because of the government's failure of proof but because of the changes brought by [that decision]."); *United States v. Weems*, 49 F.3d 528, 531 (9th Cir. 1995) ("The government had no reason to introduce such evidence because, at the time of trial, under the law of our circuit, the government was not required to prove that a defendant knew that structuring was illegal."); *see also United States v. Bruno*, 661 F.3d 733, 743 (2d Cir. 2011) (recognizing in dicta that "there may be sound reasons" to vacate a conviction without conducting a sufficiency-of-the-

evidence analysis based on a subsequent change in law). The Court therefore concludes that an acquittal is not warranted in these circumstances, and thus Defendant's second Rule 29(c) motion is denied.

The only remaining issue is whether Defendant's second Rule 33 motion for a new trial as to Count Five should be granted. Although the government appears to concede as much, the Court, of course, is not bound by such a concession. *See, e.g., United States v. Flores*, No. 12-cr-874 (SHS), 2017 WL 1274216, at *2 (S.D.N.Y. Apr. 4, 2017); *see also United States v. Castillo*, 896 F.3d 141, 149 (2d Cir. 2018) ("It is well-established that a court cannot properly determine a question of law on the basis of a party's concession, even a concession by the government." (internal quotation marks and footnote citations omitted)). Nevertheless, the Court independently concludes that Defendant's conviction on Count Five should be vacated due to plain instructional error, and that Defendant is entitled to a new trial on that Count.

"The plain error standard used in appellate review applies in the trial court to post-trial claims that could have been but were not raised during trial." *United States v. Awad*, 518 F. Supp. 2d 577, 582 (S.D.N.Y. 2007), *aff'd*, 369 F. App'x 242 (2d Cir. 2010); *see also, e.g., United States v. Urena*, No. 05-cr-760 (PKC), 2008 WL 2229847, at *5 (S.D.N.Y. May 29, 2008). "To establish plain error, a defendant must demonstrate that: (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the [defendant's] substantial rights, which in the ordinary case means it affected the outcome of the . . . proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings."[3] *United States v. Degroate*, 940 F.3d 167, 174 (2d Cir. 2019) (alteration in original) (internal quotation marks and footnote citation omitted); *see United States v. Olano*, 507 U.S. 725, 732–37 (1993).

As discussed above, the jury was wrongly instructed that "[t]he government need not prove that the defendant knew that his prior conviction was punishable by a term of imprisonment exceeding one year." (Tr. 770:9–11.) This constituted error that was "clear or obvious" in light of *Rehaif*. *See Henderson v. United States*, 568 U.S. 266, 279 (2013) ("[I]t is enough that an error be 'plain' at the time of appellate consideration for the second part of the four-part *Olano* test to be satisfied." (internal quotation marks and brackets omitted)).

Whether the error affected Defendant's "substantial rights" and the "fairness, integrity or public reputation of judicial proceedings" turns in part on whether the Court is free to consider "evidence" that was not presented at trial. As the *Rehaif* Court acknowledged, the requirement that the government prove a defendant's knowledge of his status under § 922(g) is not particularly burdensome as a practical matter. 139 S. Ct. at 2198; *see also id.* at 2209 (Alito, J., dissenting) (noting that "[j]uries will rarely doubt that a defendant convicted of a felony has forgotten th[e]

---

[3] Where an error results from an intervening change in law, the Second Circuit has previously employed a "modified plain error" rule, which shifts the burden at step (3) to the government. *See United States v. Prado*, 815 F.3d 93, 102 (2d Cir. 2016) (citation omitted). But as the court explained in *Prado*, it is questionable whether the modified plain error rule remains good law in light of *Johnson v. United States*, 520 U.S. 461 (1997). *Prado*, 815 F.3d at 102–03. This Court need not resolve that issue, however, "[b]ecause the outcome is the same regardless of whether the government or [Defendant] bears the burden of persuasion." *Id.* at 103.

14

experience" of imprisonment and other sentencing consequences). Based on information set forth in the July 25, 2019 Final Presentence Report, to which Defendant has thus far not objected, it appears that Defendant was previously convicted of three felonies and sentenced to a term of imprisonment longer than a year each time, including, most recently, a nine-year term of imprisonment in 2006.[4] (Doc. No. 96 ("PSR"), ¶¶ 37–39.)

Although the Second Circuit has yet to address a claim of error based on *Rehaif*,[5] the Eleventh Circuit recently rejected a claim similar to the one here at the third and fourth steps of the plain-error test after concluding that it was free to "consider proceedings that both precede and postdate the errors about which [the defendant] complains," including facts set forth in the defendant's presentence report. *United States v. Reed*, --- F.3d ---, 2019 WL 5538742, at *2–3 (11th Cir. Oct. 28, 2019); *see also, e.g.*, *United States v. Hollingshed*, 940 F.3d 410, 415–16 (8th Cir. 2019) (rejecting *Rehaif*-based claim of trial error after considering facts set forth in a presentence report without addressing, as a threshold matter, whether it was proper to consider such facts); *United States v. Benamor*, 937 F.3d 1182, 1188–89 (9th Cir. 2019) (same). In so concluding, the Eleventh Circuit relied primarily on the Supreme Court's decisions in *United States v. Dominguez Benitez*, 542 U.S. 74, 84–85 (2004), and *United States v. Vonn*, 535 U.S. 55, 74–76 (2002). *See Reed*, 2019 WL 5538742, at *2. But those decisions both arose in the context of a guilty plea, and the Supreme Court's discussion of the scope of review was expressly limited to the Rule 11 context. *See Vonn*, 535 U.S. at 74 (framing the issue as "the scope of an appellate court's enquiry into the effect of a Rule 11 violation, *whatever the review, plain error or harmless*," and explaining that the Advisory Committee expressly intended for portions of the record beyond the plea proceedings, including the sentencing record, to be considered under Rule 11 (emphasis added)); *see also Dominguez Benitez*, 542 U.S. at 80 ("[W]e [have] explained that in assessing the effect of Rule 11 error, a reviewing court must look to the entire record, not the plea proceedings alone . . . ." (citing *Vonn*, 535 U.S. at 74–75)).

The Eleventh Circuit also observed that, under *United States v. Young*, 470 U.S. 1 (1985), a court conducting a plain error analysis must evaluate a claimed error "against the entire record," and that "it is particularly important for appellate courts to relive the whole trial imaginatively and not to extract episodes in isolation from abstract questions of evidence and procedure." *Reed*, 2019 WL 5538742, at *2 (quoting *Young*, 470 U.S. at 16). In *Young*, however, the Court was not purporting to answer the question presented here: whether the "entire record" in the context of a claimed trial error means the entire *trial* record or the entire record before the reviewing court, including the sentencing record. In fact, the *Young* Court relied only on evidence presented at trial when reviewing a claim that a prosecutor committed plain error by making improper comments in summation. 470 U.S. at 16–20. This Court is not aware of any Supreme Court case holding that a court conducting a plain error analysis may uphold a jury verdict based on the strength

---

[4] In 2011, Defendant was transferred to ICE custody and subsequently deported. (PSR ¶ 39.)

[5] The Court is aware that several cases involving *Rehaif* claims are pending on appeal in the Second Circuit. *See, e.g.*, *United States v. Balde*, No. 17-3337; *United States v. Mack*, No. 16-3734; *United States v. Goolsby*, 17-2017. Although the law may therefore change between now and sentencing, the Court declines to further adjourn sentencing.

of "evidence" that was never presented to the jury.

The Court declines to adopt such a rule, which would be in stark tension with the Second Circuit's holding in *United States v. Jean-Baptiste*, 166 F.3d 102 (2d Cir. 1999). In that case, the Second Circuit rejected, on plain error review, the "contention that harmless error can be premised on the hypothesis that the jury *could* have found" the defendant guilty based on evidence in the appellate record that was not introduced at trial. *Id.* at 108 (emphasis added). In limiting its review to "the actual trial record," the Court noted that "[i]t is transparently obvious that a verdict cannot be based on 'evidence' which the jury does not see or hear." *Id.* (alteration in original) (quoting *United States v. Gjurashaj*, 706 F.2d 395, 398 n.4 (2d Cir. 1983)); *see also Yates v. Evatt*, 500 U.S. 391, 404 (1991) (holding that a court conducting a harmlessness inquiry in the context of instructional error must first "ask what evidence the jury *actually considered* in reaching its verdict" (emphasis added)).

Although *Jean-Baptiste* did not involve a post-trial change in the law like *Rehaif*, the force of its logic applies equally here. To adopt a contrary view would be to invite courts in future cases to "engage in pure speculation . . . of what a reasonable jury would have done" if facts adduced at sentencing had also been introduced at trial. *Sullivan v. Louisiana*, 508 U.S. 275, 281 (1993); *see also Dunn v. United States*, 442 U.S. 100, 107 (1979) ("[A]ppellate courts are not free to revise the basis on which a defendant is convicted simply because the same result would likely obtain on retrial."). Although a court must "relive the whole trial imaginatively" on plain error review, *Young*, 470 U.S. at 16 (quoting *Johnson v. United States*, 318 U.S. 189, 202 (1943) (Frankfurter, J., concurring)), a court is not free to imagine a different trial altogether.

In short, there is no basis for departing from the rule that "the actual trial record" controls on plain error review. *Jean-Baptiste*, 166 F.3d at 108. And because there was clearly insufficient evidence in the actual trial record to establish the knowledge element of the § 922(g) offense charged in Count Five, vacatur is warranted. *See, e.g., United States v. Prado*, 815 F.3d 93, 102–04 (2d Cir. 2016); *United States v. Mahaffy*, 693 F.3d 113, 135–36, 138 (2d Cir. 2012); *Bruno*, 661 F.3d at 740. Accordingly, Defendant's second Rule 33 motion for a new trial on Count Five is granted.

IV. CONCLUSION

For the foregoing reasons, Defendant's April 12, 2019 motion for a judgment of acquittal or new trial is DENIED, and Defendant's August 5, 2019 second motion for a judgment of acquittal or new trial on Count Five is GRANTED in part and DENIED in part. The government shall apprise the Court, no later than November 12, 2019, whether it wishes to proceed with a new trial on Count Five.[6] The parties are reminded that Defendant's sentencing is scheduled to be held on November 25, 2019 at 10:00 a.m. The sentencing, previously scheduled to be held in Courtroom 15A of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007, shall be held in Courtroom 23B of the same courthouse. Defendant's sentencing submission is due on November

---

[6] The Court notes that a conviction on Count Five would likely have no impact on Defendant's Sentencing Guidelines range because Counts One, Two, Three, and Five would be grouped pursuant to U.S.S.G. § 3D1.2(c), with the applicable offense level for the group determined by the narcotics counts pursuant to § 3D1.3(a). (*See* PSR ¶¶ 24–25.)

12, 2019, and the government's submission is due on November 19, 2019.

The Clerk of Court is respectfully directed to terminate the motions pending at document numbers 86, 87, and 97.

SO ORDERED.

_____
RICHARD J. SULLIVAN
United States Circuit Judge
Sitting by Designation

Dated: November 5, 2019
      New York, New York

\* \* \*

The United States of America is represented by United States Attorney Geoffrey Berman and Assistant United States Attorneys Kyle Wirshba, Elinor Tarlow, and Alison Moe, United States Attorney's Office for the Southern District of New York, One Saint Andrew's Plaza, New York, NY 10007.

Defendant is represented by Noam Biale of Sher Tremonte LLP, 90 Broad Street, New York, NY 10004, and Samuel Gregory of the Law Offices of Samuel Gregory P.C., 45 Main Street, Brooklyn, NY 11201.